1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE individually, and RICHARD ROE on behalf of Minor A, Minor B, and Minor C,<br><br>        Plaintiffs,<br><br>    v.<br><br>BUTTE COUNTY PROBATION DEPARTMENT, ROXANNE LARA, DAWN HOROWITZ-PERSON,<br><br>        Defendants. | No. 2:20-cv-02248-TLN-DMC<br><br>**ORDER** |

This matter is before the Court on Plaintiff John Doe's ("Plaintiff") *ex parte* Motion for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction ("TRO"). (ECF No. 10.) For the reasons set forth herein, Plaintiff's Motion for TRO is GRANTED in part and DENIED in part.

///
///
///
///
///
///

1

### I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was arrested for possession of child pornography in 2014 and convicted of the offense by jury trial in state court in March 2019.  (*See* Ex. 1.)[1]  This was a highly-publicized trial, in which Plaintiff proceeded under his real name.  (*See* ECF No. 2-1 at 2.)  At sentencing, the court ordered Plaintiff to serve five years in state prison under the custody of the California Department of Corrections and Rehabilitation ("CDCR"), to register as a sex offender, and to pay a fine.  (ECF No. 10-1 at 7.)  Plaintiff asserts there was no order of probation or mandatory supervision, and the sentencing court did not impose any special conditions of supervised release at that time.  (*Id.*)

Plaintiff was released from custody on or about October 10, 2020.  (ECF No. 10-1 at 7; *see also* Exs. 4–5.)  Plaintiff asserts CDCR determined at that time that Plaintiff was not considered a high-risk sex offender and was therefore to be released on "Post-Release Community Supervision" ("PRCS") instead of parole.   (ECF No. 10-1 at 7; *see also* Ex. 4.)  Further, CDCR purportedly indicated that Plaintiff would be subject only to the general PRCS conditions mandated by the Postrelease Community Supervision Act of 2011 (Cal. Pen. Code §§ 3450–3465) ("PRCS Act") and not any special conditions.[2]  (*Id.*)  However, when Plaintiff reported to Defendant Butte County Probation Department ("BCPD") for his initial reporting on or around October 12, 2020, he discovered that BCPD had elected to apply several special PRCS conditions to him.  (ECF No. 10-1 at 7; *see also* Ex. 5.)  Plaintiff claims these additional special conditions were imposed without warning or justification and therefore violate his constitutional rights.  (*See generally* ECF No. 10-1.)

---

[1]      For purposes of this Order, all references made hereinafter to Exhibits 1–5 pertain to the exhibits filed under seal by Plaintiff alongside his Declaration in Support of Motion for TRO (ECF No. 10-2).

[2]      This allegation appears to somewhat conflict with certain documents Plaintiff filed under seal, specifically, a PRCS form signed by Plaintiff on August 24, 2020.  The PRCS form identifies the general PRCS conditions Plaintiff would be subject to upon release, but also notes special conditions were "TBD" (to be determined), thus indicating that CDCR intended to impose some special conditions on Plaintiff.  Included under the special conditions section of the form is a signature box which states, "I acknowledge my special conditions of PRCS," and which was initialed by Plaintiff.  (Ex. 4.)

1    In particular, Defendant Deputy Probation Officer Roxanne Lara ("Lara") informed
2    Plaintiff that application of the "Not Living/Visiting/Being Near Minors" and "No Contact [with]
3    Minors" conditions meant that Plaintiff could not live in the same home as his own minor
4    children and that this restriction would not be lifted without the approval of Plaintiff's appointed
5    therapist, Defendant Dawn Horowitz-Person ("Horowitz-Person"). (ECF No. 1 at 13–15.) When
6    Plaintiff sought permission from Horowitz-Person to lift the restriction, she informed him she
7    would not do so until after completing at least six months of therapy with Plaintiff. (*See id.* at
8    15–16.)
9    On November 10, 2020, Plaintiff initiated this action on behalf of himself and Minors A,
10   B, and C against Defendants BCPD, Lara, and Horowitz-Person (collectively, "Defendants").
11   (ECF No. 1.) The Complaint asserts thirteen causes of action that challenge Plaintiff's PRCS
12   conditions as violative of the Bane Act (Cal. Civ. Code § 52.1), the California Constitution, and
13   the U.S. Constitution, and claim Defendants conspired to prevent Plaintiff from residing with his
14   minor children in violation of their constitutional rights. (ECF No. 1 at 39–53.) Plaintiff seeks
15   damages, attorney's fees, and costs, as well as injunctive relief that prohibits BCPD from
16   enforcing any of the special PRCS restrictions and declares the PRCS conditions void as
17   preempted by state law. (*Id.* at 53–54.)
18   Concurrent with the Complaint, Plaintiff also filed a Motion to Proceed Under
19   Pseudonyms and to Redact or Seal Identifying Documents ("Pseudonym Motion"). (ECF No. 2.)
20   Plaintiff's Pseudonym Motion is currently set for hearing on January 7, 2021. (ECF No. 7.)
21   On November 18, 2020, Plaintiff filed the instant *Ex Parte* Motion for TRO. (ECF No.
22   10.)
23   **II.     STANDARD OF LAW**
24   A temporary restraining order is an extraordinary remedy. The purpose of a temporary
25   restraining order is to preserve the status quo pending a fuller hearing. *See* Fed. R. Civ. P. 65; *see*
26   *also Costa Mesa City Emp.'s Ass'n. v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) (on
27   preliminary injunction, "[t]he purpose of such an order is to preserve the status quo until a final
28   determination following a trial."); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th

Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy."). In general, "[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions." *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010); *see also* L.R. 231(a).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion, the district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* Under the sliding scale approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (quoting *All. for the Wild Rockies*, 632 F.3d at 1131). Simply put, a stronger showing on the balance of the hardships may support issuing injunctive relief even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies*, 632 F.3d at 1135.

A TRO — unlike a preliminary injunction — may issue even where the adverse party has not received notice of the motion. However, such an order may issue only if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

The Eastern District of California Local Rules also impose additional requirements for a motion for a TRO. First, the Court will consider whether the moving party has unnecessarily delayed in seeking injunctive relief. *See* E.D. Cal. L.R. 231(b). Second, the moving party must

provide specific documents to the court in support of the requested TRO.  *See* E.D. Cal. L.R. 231(c).

### III.   ANALYSIS

Plaintiff seeks to enjoin BCPD and Lara from enforcing the special PRCS conditions that were applied when Plaintiff was released from custody.  (ECF No. 10 at 1–2.)  Plaintiff claims the special conditions were imposed "internally without court order" and without due process, in violation of the California Constitution and the First and Fourteenth Amendments of the U.S. Constitution.  (*Id.* at 2.)  Plaintiff further claims these conditions exceed the authority granted under the PRCS Act and are preempted by state law.  (*Id.*)

Additionally, Plaintiff seeks an order that enjoins all Defendants and their counsel from identifying, through unredacted or unsealed public court filings or by any other means, the true identity of Plaintiff, or any characteristics that would reveal his identity, until the Court rules on Plaintiff's pending Motion to Proceed Under Pseudonyms and to Redact or Seal Identifying Documents (ECF No. 2).  (*Id.*)

The Court notes these requests, though framed in a single Motion for TRO, present two discrete issues requiring separate analyses.  Accordingly, the Court will address each of Plaintiff's requests in turn.

#### A.   TRO to Enjoin Enforcement of Special PRCS Conditions

With respect to Plaintiff's request seeking to enjoin BCPD and Lara's enforcement of each of the identified special PRCS conditions, the Court finds denial of Plaintiff's motion is warranted on procedural grounds alone.

##### i.   *Undue Delay*

Local Rule 231(b), which governs the timing of motions for TRO, provides that "the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order."  E.D. Cal. L.R. 231(b); *see also Brian Lichtenberg, LLC v. Alex & Chloe, Inc.*, No. CV 13–06837, 2013 WL 5775134, at *4 (C.D. Cal. Oct. 25, 2013) ("In analyzing

///

5

1   irreparable harm, courts should take into account whether a movant 'proceeded as quickly as it
2   could have' in seeking a TRO.").

3   At the TRO stage, courts consider whether the movant would have been able to file a
4   noticed preliminary injunction motion had it acted diligently. *See, e.g.*, *Occupy Sacramento v.*
5   *City of Sacramento*, 2:11–CV–02873, 2011 WL 5374748, at *4 (E.D. Cal. Nov. 4, 2011)
6   (denying application for TRO for 25-day delay from initial threat of harm).  Should the Court find
7   such a delay, the Court may deny the requested TRO on those grounds alone.  E.D. Cal. L.R.
8   231(b); *see also Occupy Sacramento*, 2011 WL 5374748, at *4 (denying TRO application solely
9   based on Local Rule 231(b)); *Mammoth Specialty Lodging, LLC v. We-Ka-Jassa Inv. Fund, LLC*
10  *(Mammoth)*, No. CIV-S10-0864-LKK-JFM, 2010 WL 1539811, at *2 (E.D. Cal. Apr. 16, 2010)
11  (same); *Murphy v. United States Forest Serv.*, No. 2:13-CV-02315-GEB-AC, 2013 WL
12  12174044, at *1 (E.D. Cal. Nov. 15, 2013) (declining to address substantive issues where plaintiff
13  provided no explanation as to why he waited more than a month to file a motion for a TRO).

14  Here, Plaintiff's initial "Notice and Conditions of Postrelease Community Supervision"
15  form indicates Plaintiff's special conditions of PRCS were "TBD" (to be determined).  (Ex. 4.)
16  Plaintiff signed and initialed this form on August 24, 2020, indicating his acknowledgment of
17  pending special conditions.  (*Id.*)  Additional documentation filed by Plaintiff under seal indicates
18  he was released from prison on or around October 10, 2020.  (*Id.*)  On October 12, 2020, Plaintiff
19  signed release documents which identify each of the special conditions at issue in the instant
20  Motion for TRO.  (Ex. 5.)  Notably, Plaintiff's initials appear next to each discrete paragraph
21  setting forth each of the special conditions identified on the aforementioned form.  (*Id.*)
22  Therefore, it appears from the face of the documentation submitted by Plaintiff that he received
23  notice he would be required to consent to the imposition of special conditions in order to be
24  granted a release from prison on probation at least as early as August 24, 2020, and he was aware
25  of the specific special conditions that applied to his release on or around October 12, 2020.  Yet
26  Plaintiff did not seek a TRO until November 18, 2020, over a month after purportedly receiving
27  specific notice of the special conditions to be applied to the terms of his release.  Indeed, it is
28  unclear why Plaintiff did not file a lawsuit challenging the validity of the special PRCS conditions

of his release sooner. Plaintiff's efforts after initiating this lawsuit to convince Defendants via meet and confer to stipulate to the terms of his proposed TRO (*see* ECF No. 10 at 3; ECF No. 11 at 1–3) does not excuse his failure to seek a TRO sooner. As such, Plaintiff fails to establish he was somehow prevented from timely seeking a "preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order." E.D. Cal. L.R. 231(b); *see also Occupy Sacramento*, 2011 WL 5374748, at *4; *Mammoth*, 2010 WL 1539811, at *2; *Murphy*, 2013 WL 12174044, at *1. On this basis alone, the Court finds denial of Plaintiff's Motion is warranted.

        *ii.*   Status Quo

The second concern for the Court relates to the purpose of a TRO. The purpose of a TRO is to preserve the status quo "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974); *see also* Fed. R. Civ. P. 65. Here, the status quo is that Plaintiff agreed to submit to certain special PRCS conditions in order to be released on PRCS. At the latest, Plaintiff acknowledged and agreed to those terms on October 12, 2020. Thus, Plaintiff's Motion for TRO does not seek to maintain the status quo, rather it seeks to alter the status quo: if granted, Defendants would be precluded from enforcing the specific requirements that were duly presented as a pre-condition to Plaintiff's release, while Plaintiff retained the benefits of his agreement to be subjected to said special conditions. This would be a material change of position from the status quo.

Plaintiff further contends an expedited hearing is required because his constitutional rights are being violated every day the PRCS conditions remain in effect, and "each day spent apart [from his three minor children] is precious family time lost that can never be brought back with legal remedies." (ECF No. 10 at 4.) While the Court is mindful of this hardship, it remains unpersuaded that the harm Plaintiff identifies constitutes a new and imminent harm that will occur absent emergency injunctive relief. In sum, the Court is not persuaded that the purpose of Plaintiff's Motion is to maintain the status quo, which is the underlying purpose of a TRO. *See Granny Goose Foods*, 415 U.S. at 439.

1    For the foregoing reasons, the Court exercises its discretion under Local Rule 231(b) to
2 DENY Plaintiff's TRO for last-minute relief with respect to his request to enjoin enforcement of
3 his special PRCS conditions (ECF No. 10 at 8–21, 22–24).

4                      B.       Request to Proceed Under Pseudonym

5    The Court next considers Plaintiff's request to enjoin Defendants from filing documents
6 that reveal Plaintiff's identity and permit Plaintiff to proceed under a pseudonym until the Court's
7 ruling on Plaintiff's pending Pseudonym Motion (ECF No. 2).
8    With respect to this request, the Court finds Plaintiff has met the procedural requirements
9 outlined by Local Rule 231(c) and has not unnecessarily delayed in seeking injunctive relief. *See*
10 L.R. 231(b), (c). Specifically, unlike Plaintiff's prior request, the earliest date Plaintiff could seek
11 to proceed under a pseudonym was the date that he initiated this action. Here, Plaintiff filed his
12 Pseudonym Motion on the same day that he initiated this action. (*See* ECF Nos. 1–2.) Plaintiff
13 additionally included a separate correspondence to each Defendant with the Complaint in which
14 he sought to meet and confer with Defendants as to the pseudonym issue. (ECF No. 10 at 3; ECF
15 No. 11 at 1–3.) Further, the Court finds that filing the Motion *ex parte* was justified where
16 counsel for Plaintiff, Ms. Lund, avers that she encountered difficulty in her attempts to meet and
17 confer with Defendants prior to filing the Motion for TRO due to multiple unsuccessful service
18 attempts with respect to Horowitz-Person and Lara. (*See* ECF No. 6; ECF No. 10 at 3; ECF No.
19 11 at 2–3.)
20   Thus, the Court finds Plaintiff has sufficiently established he has not unnecessarily
21 delayed and that filing the Motion *ex parte* was justified with respect to the pseudonym issue.
22 Accordingly, the Court addresses Plaintiff's Motion for TRO as to the pseudonym issue on the
23 merits with respect to each prong of the injunctive relief analysis.

24                      i.       *Likelihood of Success on the Merits*

25   Plaintiff's instant request seeks to prevent Defendants from filing identifying information
26 about him and permit Plaintiff to proceed by pseudonym until the Court has ruled on his pending
27 Pseudonym Motion, which is currently set for hearing on January 7, 2021.
28   As a general rule, "the identity of the parties in any action, civil or criminal, should not be

8

concealed except in an unusual case, where there is a need for the cloak of anonymity." *United States v. Doe (Doe I)*, 488 F.3d 1154, 1156 n.1 (9th Cir. 2007); *see also United States v. Doe (Doe II)*, 655 F.2d 920, 922 n.1 (9th Cir. 1981) (granting a request for use of a pseudonym in an "unusual case" where criminal defendant was a government informant who, the parties agreed, would have "faced a risk of serious bodily harm if his role on behalf of the government were disclosed to other inmates"). In the unusual case, a court must consider whether anonymity is "necessary to protect a person from injury or harassment." *Doe I*, 488 F.3d at 1156 n.1. The court must then "balance the need for anonymity against the general presumption that parties' identities are public information." *Does I thru XXIII v. Advanced Textile Corp. (Advanced Textile)*, 214 F.3d 1058, 1068 (9th Cir. 2000) (applying this balancing test to the specific context of a civil employment retaliation claim). To determine whether to allow a party to proceed anonymously when the opposing party has objected, a district court must balance five factors: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, ... (3) the anonymous party's vulnerability to such retaliation," (4) the prejudice to the opposing party, and (5) the public interest. *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate (Kamehameha)*, 596 F.3d 1036, 1042 (9th Cir. 2010).

In his Pseudonym Motion, Plaintiff argues he presents an unusual case in which the need for anonymity arises not from the elevated risk of violence to *Plaintiff* that may result due to his status as a sex offender, but from the elevated risk of violence to Plaintiff's three minor children, who also bring this action. (*See generally* ECF No. 2.) While it is well established that minors may proceed in a suit anonymously, *see* Fed. R. Civ. P. 5.2(a), Plaintiff argues he too must proceed under pseudonym in order to prevent the public revealing of his minor children's identities that would inevitably occur if Plaintiff were required to proceed under his real name. (ECF No. 2 at 6.)

As an initial matter, the Court notes this connection appears tenuous. Indeed, the Court questions the value that proceeding under a pseudonym would have for Plaintiff at this point, as Plaintiff has admittedly already proceeded in his criminal trial and subsequent appeal under his real name, and his children's identities were already exposed to the public through the media

during Plaintiff's highly-publicized criminal trial. (*See id.* at 4.) Moreover, the Court is cognizant of the fact that the Ninth Circuit has rejected the argument that "mere membership in a class of offenders that may be targeted" constitutes a sufficiently "unusual case" for pseudonym purposes where the offender was the sole plaintiff. *U.S. v. Stoterau*, 524 F.3d 988, 1002, 1013–14 (9th Cir. 2008) (denying motion to proceed under pseudonym filed by convicted sex offender appealing several aspects of his sentence, including special conditions of his supervised release). Thus, the Court must express some skepticism as to whether Plaintiff's evidentiary support will be sufficient to prevail on the pending Pseudonym Motion after it is fully briefed by all the parties. Nevertheless, on the instant record and at this stage of the proceedings, the Court finds Plaintiff has sufficiently established his circumstances are "unusual" for purposes of the pseudonym analysis. *See generally Kamehameha*, 596 F.3d at 1042–46 (evaluating Doe children's pseudonym motion on the merits). Similarly, while mindful of the fact that Defendants have not had the opportunity to submit argument in opposition to Plaintiff's Motion for TRO, the Court nevertheless finds that Plaintiff has sufficiently established serious questions on the merits of his Pseudonym Motion at this time. *All. for the Wild Rockies*, 632 F.3d at 1135.

As to the first factor, severity of the threatened harm, Plaintiff presents a number of examples of potential threats to his children based on their association with Plaintiff. During Plaintiff's criminal trial, in which he did not proceed anonymously, Plaintiff's children were harassed and threatened merely due to their association with Plaintiff. For example, out of hundreds of online hate comments and death threats directed at Plaintiff, some commentators also questioned what Plaintiff would think if a similar crime were to happen to Plaintiff's own children. (ECF No. 2-1 at 2.) The Court finds these threats of harm are sufficiently severe to tip the first factor in Plaintiff's favor. *See Kamehameha*, 596 F.3d at 1043–44 (citing *Advanced Textile*, 214 F.3d at 1071) (recognizing that threats of physical harm present the "paradigmatic case for allowing anonymity").

In determining the second factor, the reasonableness of Plaintiffs' fears, the Court must consider the purported threats within the context of the circumstances. *Kamehameha*, 596 F.3d at 1044 (citing *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,

290 F.3d 1058, 1079–80 (9th Cir. 2002) (en banc) (taking into account the context of the "random acts of violence" of others); *Doe v. Stegall (Stegall)*, 653 F.2d 180, 183 n.6 (5th Cir. 1981) (holding plaintiffs of a lawsuit about school prayer reasonably feared harm from veiled threats of violence made at community meetings such as, "God is fixing to come back. He'll show them," "Christians must beat the evil out of these people," and "We have got to band together and whop this evil thing.")). Here, Plaintiff has submitted evidence that individuals already directed harassment and threats towards his wife and minor children merely due to their association with Plaintiff during his criminal trial. (*See* ECF No. 2-1 at 2.) In addition to threats by phone, mail, and online, dozens of people stopped by the family home, banging on the door, looking through the windows, hanging out on the front yard, and terrifying the children. (ECF No. 2-2 at 2.) Plaintiff additionally argues that the current political climate is such that "[d]isagreements specifically about the direction the criminal justice system should move have resulted in mass protests, violence, and property destruction nationwide." (ECF No. 2 at 5.) He points to examples of individuals who have supported legislation that "even tangentially concerns sex offender laws" who have been directly targeted and significantly harassed with death threats and also discusses the role of large groups on social media like QAnon, whose followers' sole agenda is to attack those they suspect to be involved with child trafficking. (*Id.* at 5–6; ECF No. 2-2 at 3.) Based on these identified threats, Plaintiff argues his fear that some individuals will attempt to levy a bit of "street justice" to help Plaintiff "understand how parents of child-victims feel when their own children are injured by an assault" are legitimate and reasonable. (*See id.*)

   Again, the Court is mindful of the fact that Defendants have not had the opportunity to submit argument in opposition to Plaintiff's Motion for TRO. Nevertheless, based on the current record and considering the context of the circumstances of this case, the Court finds Plaintiff has adequately established at this time that his fears of harm are reasonable. *See Kamehameha*, 596 F.3d at 1043 (finding threats of physical harm sufficiently severe where plaintiffs' attorney received phone calls that "both you and your haole clients can get the lickins' you deserve," and plaintiffs received threats such as "kill haole day everyday" and were warned they would need bodyguards). Accordingly, the second factor also weighs in favor of anonymity.


As to the third factor, the Court finds Plaintiff's minor children, as co-Plaintiffs, are sufficiently vulnerable to the threatened harm. *See Stegall*, 653 F.2d at 186 (finding the fact that the plaintiffs were children was "a significant factor in the matrix of considerations arguing for anonymity"); *see also* Fed. R. Civ. P. 5.2(a) (permitting redactions to ensure anonymity of minors); *Kamehameha*, 596 F.3d at 1045 (finding third factor weighed in favor of anonymity for Doe children). Because it appears at this time that the continued anonymity of Minors A, B, and C is contingent on Plaintiff proceeding under a pseudonym, the Court finds this third factor also favors Plaintiff.

With respect to potential prejudice to Defendants, the Court finds this fourth factor also weighs in Plaintiff's favor. Plaintiff and the Doe children's identities are known to Defendants from the documents filed under seal and Plaintiff's personal communications with respect to filing the instant action under pseudonym. (*See* ECF No. 2 at 6–7; ECF No. 2-1 at 3.) Therefore, the Court cannot at this time identify any prejudice that would result against Defendants.[3] Moreover, to the extent Defendants would be required to redact certain documents or file them under seal, the Court finds such administrative burdens, at most, only minimally prejudice Defendants. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).

Finally, with respect to the fifth factor, the Court acknowledges the public generally has a "common law right of access" to judicial proceedings. *See Nixon v. Warner Comm'ns., Inc.*, 435 U.S. 589, 598–99 (1978); *Stoterau*, 524 F.3d at 1013 (discussing public interest in open judicial proceedings in criminal case). Nevertheless, the Supreme Court has approved the use of pseudonyms for litigants vindicating certain constitutional rights. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113 (1973); *Doe v. Bolton*, 410 U.S. 179 (1973); *Poe v. Ullman*, 367 U.S. 497 (1961). Here, the Court does not at this time discern that anonymizing Plaintiffs' names will obstruct public

---

[3] Again, the Court notes this finding is based solely on the record currently before it in this nascent stage of the litigation. Further, while the Court finds no prejudice to Defendants for purposes of the instant Motion for TRO, it declines to make a determination at this time as to whether Defendants will be prejudiced at later stages of the litigation if Plaintiff proceeds under a pseudonym. *See Advanced Textile*, 214 F.3d at 1068–69 (holding a court must "determine the precise prejudice at each stage of the proceedings" because the "balance … may change as the litigation progresses.").

scrutiny of the important issues in this case.  Moreover, the Court finds the public's interest in seeing cases decided on the merits tips this factor in Plaintiff's favor.  *Advanced Textile*, 214 F.3d at 1073.  Here, to the extent Plaintiff will dismiss his constitutional claims based on familial association if the Court denies his Pseudonym Motion because he fears vigilante justice will be taken out against his minor children (*see* ECF No. 2-1 at 3), the Court finds the public's interest in seeing the case decided on the merits is likely best served by granting Plaintiff's Pseudonym Motion.

For the foregoing reasons, the Court finds Plaintiff sufficiently raises serious questions on the merits of his Pseudonym Motion.

### ii.     *Irreparable Injury*

As previously discussed, Plaintiff has raised several concerns with respect to veiled threats of physical violence that were made against Minors A, B, and C during Plaintiff's criminal trial merely because of the children's relation to Plaintiff, a convicted sex offender.  (*See* ECF No. 2 at 5–6; ECF No. 2-1 at 2; ECF No. 2-2 at 3.)  The Court has also determined Plaintiff's concerns that repercussions will similarly be taken out against his children should their identities as the minor Plaintiffs in the instant lawsuit become revealed are reasonable based on the record before the Court at this time.  The Court therefore finds that the potential physical harm to Plaintiff or his minor children that could result if Plaintiff's identity was made known before the Court's ruling on the pending Pseudonym Motion constitutes irreparable harm.  Accordingly, the Court finds Plaintiff has sufficiently shown a likelihood of irreparable harm in the absence of a TRO.

### iii.    *Balance of the Equities*

A court balancing the equities will look to possible harm that could befall either party.  *See CytoSport, Inc. v. Vital Pharms., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009), *aff'd*, 348 Fed. App'x. 288 (9th Cir. 2009).  Where the Court finds serious questions going to the merits, the balance of equities must tip sharply in favor of Plaintiff.  *Pimentel*, 670 F.3d at 1105 (9th Cir. 2012); *All. for the Wild Rockies*, 632 F.3d at 1135.

Here, in light of the Court's determination that Plaintiff has sufficiently established serious questions regarding his likelihood of success on the merits of his Pseudonym Motion and

1  of likely irreparable harm, the Court finds the balance of equities tips in Plaintiff's favor.  By
2  contrast, at this time, the Court has identified only minimal prejudice that may result to
3  Defendants if the Pseudonym Motion were granted.  Any such prejudice is further diminished in
4  light of Plaintiff's very limited request in the instant Motion for TRO to merely proceed under a
5  pseudonym until the Court has ruled on Plaintiff's pending Pseudonym Motion.  Indeed, should
6  Defendants prevail against Plaintiff in the pending Pseudonym Motion, which is set for hearing in
7  less than a month, they are not barred from filing unredacted, identifying documents for the
8  remainder of the litigation.  For these reasons, the Court finds the balance of equities sufficiently
9  tips in favor of Plaintiff.

10              *iv.     Public Interest*

11     Here, the Court finds the public interest factor weighs in Plaintiff's favor for the same
12  reasons previously discussed.

13     In sum, for the foregoing reasons, the Court finds Plaintiff has made a sufficient showing
14  on all four of the *Winter* prongs such that granting Plaintiff's Motion for TRO with respect to his
15  pseudonym request is appropriate at this time.

16              *v.      Waiver of Bond Requirement*

17     Lastly, no bond shall be required.  *See* Fed. R. Civ. Pro. 65(c) (requiring movant to post
18  security); *People of Cal. v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1325–26 (9th Cir.
19  1985) (providing that "courts have discretion to excuse the bond requirement").  The Court
20  concludes there is no realistic likelihood of harm to Defendants from prohibiting them from
21  revealing Plaintiff's identity for less than two months at the outset of this litigation, pending the
22  Court's ruling on Plaintiff's Pseudonym Motion.  *See Jorgensen v. Cassiday*, 320 F. 3d 906, 919
23  (9th Cir. 2003) ("The district court may dispense with the filing of a bond when it concludes there
24  is no realistic likelihood of harm to the defendant from enjoining his or her conduct.").
25  Furthermore, the Court finds waiver of the bond requirement is appropriate here because Plaintiff
26  has raised serious questions with respect to the likelihood of success on the merits on his
27  Pseudonym Motion.  *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1116 (C.D.
28  Cal. 2007) ("A bond may not be required, or may be minimal, when the harm to the enjoined

party is slight or where the movant has demonstrated a likelihood of success."). Accordingly, the Court waives the bond requirement.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Ex Parte* Motion for TRO with respect to Plaintiff's request to enjoin BCPD and Lara's enforcement of his special PRCS conditions is DENIED without prejudice. (ECF No. 10 at 8–21, 22–24.)

Plaintiff's *Ex Parte* Motion for TRO is GRANTED with respect to Plaintiff's request to temporarily enjoin Defendants from revealing Plaintiff's identity, and to permit Plaintiff and Minors A, B, and C to proceed under pseudonym. (ECF No. 10 at 21–22.) Pursuant to this Order, Plaintiff and his children are permitted to proceed in this matter under the pseudonyms of "John Doe," and "Minors A, B, and C." Defendants are temporarily enjoined from disclosing, via an unredacted or unsealed public court filing or any other method of disclosure, Plaintiff's true identity or any identifying characteristic of him or his criminal prosecution.

Defendants are ordered to show cause in writing no later than December 21, 2020, as to why an Order for Preliminary Injunction should not be granted pending briefing and disposition of Plaintiff's pending Pseudonym Motion (ECF No. 2). Such briefing shall be filed and served by the aforementioned date. Plaintiff may file and serve a reply not later than December 28, 2020. In order to permit the recently-served Defendant Lara an opportunity to review and respond to Plaintiff's Motion, the Court finds good cause to exercise its discretion to extend the expiration deadline of the TRO. Fed. R. Civ. P. 65(b)(2). Accordingly, the TRO shall remain in effect for 28 days, or until an order on Plaintiff's request for preliminary injunction issues, whichever is sooner.

Pursuant to Local Rule 231(c)(8) and Federal Rule of Civil Procedure 65(b), any party affected by this Order shall have the right to apply to the Court for modification or dissolution of this Order on two (2) days' notice or such shorter notice as the Court may allow. No bond shall be required.

///

///

IT IS SO ORDERED.

DATED: December 9, 2020

Troy L. Nunley
United States District Judge