**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN DOE and JANIE DOE, individually, and RICHARD ROE, on behalf of MINOR B and MINOR C,<br><br>Plaintiffs,<br><br>v.<br><br>BUTTE COUNTY PROBATION DEPARTMENT, et al.,<br><br>Defendants. | No. 2:20-CV-02248-DJC-ICD<br><br><u>FINDINGS AND RECOMMENDATIONS ON DEFENDANT HOROWITZ-PERSON'S MOTION TO DISMISS</u> |

Plaintiffs, proceeding with counsel, bring this civil rights action under 42 U.S.C. § 1983 and California law challenging the conditions of post-release community supervision ("PRCS") imposed on Plaintiff John Doe after his release from state prison. ECF No. 83. Before the Court is the motion of Defendant Dawn Horwitz-Person to dismiss the claims against her in Plaintiffs' third amended complaint ("TAC") under Federal Rule of Civil Procedure 12(b)(6). ECF No. 88. Plaintiffs oppose the motion, ECF No. 91, and Horwitz-Person filed a reply, ECF No. 96. The District Judge has referred the motion to a Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. ECF No. 105. The motion was previously submitted without oral argument, ECF Nos. 93, 100, and the undersigned finds it suitable for decision on the papers. *See* E.D. Cal. L.R. 230(g). The separate motion to dismiss filed by Defendants Butte County Probation Department ("BCPD" or "the County"), Roxanne Lara, and Candice Carr (collectively, "County Defendants"), ECF No. 87, is addressed in separate findings and recommendations issued concurrently.

For the reasons below, the undersigned recommends that the motion be granted as to the

Seventh and Eighth Claims, with leave to amend, and denied as to the Fifth and Sixth Claims. In brief, the TAC plausibly alleges that Horwitz-Person acted jointly with the County in deciding whether Doe could return home, that she is not entitled to absolute immunity, and that she and the County Defendants together interfered with Plaintiffs' familial association. But requiring a participant in sex offender treatment to acknowledge his offense, even when relaxing his supervision restrictions depends on it, does not shock the conscience, so the coercive-interrogation claims fail.

## I. BACKGROUND

### A. Procedural History

Plaintiffs filed this action on November 9, 2020. ECF No. 1. After early motion practice concerning temporary injunctive relief and pseudonyms, *see* ECF Nos. 18, 28, Defendants moved to dismiss the original complaint, ECF Nos. 34, 35. Those motions were denied as moot when the Court granted Plaintiffs leave to file a supplemental complaint. ECF No. 71. Plaintiffs then filed a first amended complaint, which added Defendant Carr, ECF No. 72, and, by stipulation, a second and then a third amended complaint, ECF Nos. 78, 80, 82, 83. The TAC, filed May 6, 2022, is the operative pleading. ECF No. 83. No court has yet ruled on the sufficiency of any of Plaintiffs' pleadings.

Defendant Horwitz-Person filed the pending motion on June 10, 2022. ECF No. 88. Briefing closed in July 2022. ECF Nos. 91, 96. The action was later reassigned twice, ECF Nos. 98, 100, and on October 25, 2024, the District Judge referred the pending motions to dismiss to the assigned Magistrate Judge, ECF No. 105. On November 22, 2024, the District Judge approved the substitution of Janie Doe, formerly identified as Minor A, as a plaintiff in her own right and recaptioned the action. ECF No. 107. The action was reassigned to the undersigned on September 11, 2026. ECF No. 109.

### B. Plaintiffs' Allegations

The following allegations are taken from the third amended complaint and are accepted as true for purposes of the pending motion.

Doe was convicted in state court of possession of child pornography and was sentenced to

a determinate term of five years in prison. ECF No. 83, ¶¶ 14, 17, 19. He testified to his innocence at trial and has maintained it since. *Id.* ¶¶ 16, 34, 37-38. According to the TAC, no contact offense was ever alleged against Doe, and a child-protection investigation of his household after his arrest raised no concerns. He lived at home with his wife and children throughout the four-year prosecution. A court-ordered psychological examination reported "no suspicions" that he had abused his own children, and the sentencing court imposed no conditions restricting his contact with them. *Id.* ¶¶ 14-15, 19.

Having earned sentence credits, Doe was released from prison by operation of law on October 10, 2020, to PRCS under BCPD's supervision. *Id.* ¶¶ 21-22, 28. Before his release, BCPD returned CDCR's notice-of-conditions form with "TBD" written in the space for special conditions, and a CDCR parole officer told Doe that "this is typical of Butte County" and that he would be subject only to the standard PRCS and registration requirements. *Id.* ¶¶ 23-27.

When Doe reported to BCPD two days after his release, he was handed an extensive list of special conditions and fitted with a GPS monitor. *Id.* ¶ 29. When he said he was having trouble processing the conditions, BCPD staff told him, "You do not need to agree with the terms, but you do have to sign." *Id.* ¶ 30. Among other things, the conditions:

1. required Doe to "successfully" participate in sex offender specific therapy;
2. barred him from living with anyone having care or custody of minors, and from contact with minors, including his own children, except in the immediate presence of a "responsible adult" approved in advance by his probation officer;
3. required him to waive the confidentiality of his treatment, including as to the court and the district attorney;
4. barred him from knowingly associating with anyone ever convicted of a drug offense; and
5. required him to consent to any law enforcement agency's capture of his electronic communications.

*Id.* ¶¶ 51-52, 55-56, 60-61, 75-80, 89.

Defendant Lara, Doe's probation officer, at first told Doe that she had prepared the

conditions, but later told him that they were required and that she had no say in them. *Id.* ¶¶ 7, 40. Defendant Carr, a supervising probation officer, later filed a declaration in this action describing certain conditions as “standard” within BCPD. *Id.* ¶¶ 9, 40. When Doe asked Lara how to appeal his conditions, she told him that no such process existed. *Id.* ¶ 44.

Lara told Doe that he could not live at home until the therapist she assigned him said it was safe, and that she could not approve his wife as a “responsible adult” without that therapist’s approval. *Id.* ¶¶ 31-32, 36. Lara gave Doe a paper listing two providers but “specifically ordered him to ‘use her,’” pointing to Defendant Horwitz-Person, a therapist who “works in cooperation with” BCPD in providing sex offender specific therapy to its supervisees. *Id.* ¶¶ 8, 33. Lara’s declaration, as quoted in the TAC, states that “[u]pon a proper evaluation of his progress from probation and his therapist, it would then be determined if he could cohabitate or be near minor children.” *Id.* ¶ 56.

When Doe and his wife called Horwitz-Person that day, she told them that, because Doe maintained his innocence, her approval for him to return home could not come any earlier than six months into therapy. *Id.* ¶ 34. At his intake appointment, she asked how he could “successfully” complete therapy if he refused to say he committed the crime. She told him that she could find his wife to be a “responsible adult” only if Doe first admitted the crime and his wife then said she believed he committed it. *Id.* ¶¶ 37-38. Each week, Horwitz-Person demanded that Doe admit the crime; when he would not, he was “excused” from the group session. She never asked him to take a polygraph, to which he had no objection, and she never contacted his wife or children. *Id.* ¶¶ 37, 140, 142. Lara and Carr would not approve Doe’s return home without Horwitz-Person’s approval, and Horwitz-Person would not give it without an admission, which would be disclosed, without immunity, to the County Defendants, the district attorney, and the courts. *Id.* ¶ 143.

Lara rejected every alternative Plaintiffs proposed, including visits supervised by Doe’s wife and telephone calls, telling Doe that she needed Horwitz-Person’s approval. *Id.* ¶¶ 130-34. Doe had no contact with his children from October 12, 2020, until July 7, 2021. *Id.* ¶¶ 127, 252.

Doe’s last session with Horwitz-Person was on December 1, 2020, after she asked that he

no longer attend, and in January 2021 she terminated all contact with him. *Id.* ¶¶ 201, 206. Lara then directed Doe to enroll with another provider, New Beginnings. *Id.* ¶¶ 202, 209-10.

In June 2021, Lara permitted Doe to relocate to Mendocino County, whose probation department accepted him into its PRCS program on July 7, 2021, and did not impose the family restrictions or the treatment requirement. *Id.* ¶¶ 247-54. Doe was discharged from PRCS effective October 10, 2021, is “no longer in any form of custody,” and now lives at home with his family. *Id.* ¶¶ 4, 255-56.

**C. The Claims Against Horwitz-Person**

The TAC asserts twenty-six claims, four of which name Horwitz-Person. In the Fifth Claim, all Plaintiffs allege under § 1983 that Horwitz-Person conspired with Lara and Carr to deprive them of their right to familial association by withholding approval of Doe’s return home. ECF No. 83, ¶¶ 136-44. In the Sixth Claim, all Plaintiffs allege that Horwitz-Person and the County Defendants interfered with their right to familial association under the California Constitution, in violation of the Tom Bane Civil Rights Act, California Civil Code § 52.1. *Id.* ¶¶ 145-48. In the Seventh Claim, Doe alleges under § 1983 that Horwitz-Person, Lara, and Carr conspired to coercively interrogate him in violation of the Fourteenth Amendment. Id. ¶¶ 149-53. And in the Eighth Claim, Doe alleges the same conduct violated his right to due process under the California Constitution, in violation of the Bane Act. *Id.* ¶¶ 154-57. The TAC seeks damages and other relief. *Id.* pp. 79-81.

**D. The Pending Motion**

Horwitz-Person moves to dismiss the four claims against her. She argues that PRCS is constitutional; that Doe agreed to his conditions; that she did not act under color of state law; that she is entitled to absolute and qualified immunity; and that Plaintiffs have alleged neither a conspiracy nor a Bane Act violation. ECF No. 88-1, pp. 7-15; ECF No. 96, pp. 2-6.

## II. LEGAL STANDARD

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *See Manzarek v. St. Paul*

*Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). All ambiguities or doubts must also be resolved in the plaintiffs' favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 555. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Dismissal under Rule 12(b)(6) may rest on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. *See Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997). The Court may, however, consider certain materials without converting the motion to dismiss into a motion for summary judgment, such as: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); (2) documents whose authenticity is not in question, upon which the complaint necessarily relies, but which are not physically attached to the complaint, *see*

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); and (3) documents and materials of which the Court may take judicial notice, *see Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). These exceptions have limits: the Court may take judicial notice of matters of public record, but not of disputed facts contained in them, and may not assume the truth of an incorporated document where doing so would only serve to dispute facts stated in a well-pleaded complaint. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999-1003 (9th Cir. 2018).

## III. DISCUSSION

### A. PRCS Act and Doe's Alleged Consent

Horwitz-Person first argues that PRCS is constitutional and that the County properly imposed Doe's conditions. ECF No. 88-1, pp. 8-9. Plaintiffs do not challenge the constitutionality of the PRCS Act, ECF No. 91, p. 5, and they do not allege that Horwitz-Person imposed any condition. Their claims against her concern her own conduct in deciding whether Doe could return home. *See* ECF No. 83, ¶¶ 34, 37-38, 138-44. The argument therefore does not bear on the claims against her.

Horwitz-Person next argues that Doe "expressly agreed" to his conditions and "cannot now claim that these conditions were unfair after he secured the benefit of his release." ECF No. 88-1, pp. 9-10 (citing Cal. Civ. Code § 3521); *see* ECF No. 96, pp. 2-3. Plaintiffs respond that PRCS conditions are imposed by law rather than by agreement and that Doe signed the forms only under threat of revocation. ECF No. 91, pp. 6-11.

The argument is in substance one of waiver or estoppel, which are affirmative defenses. *See* Fed. R. Civ. P. 8(c)(1). A complaint may be dismissed based on an affirmative defense only when the defense is apparent from the face of the complaint. *See Jones v. Bock*, 549 U.S. 199, 215 (2007); *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). It is not apparent here.

First, the premise of the argument, that Doe accepted his conditions as part of a bargain, is inconsistent with the PRCS Act and with the TAC. Doe was released to PRCS by operation of law upon completing his prison term, *see* Cal. Penal Code § 3451(a); ECF No. 83, ¶ 21, and the Act requires only that a supervisee "be informed of the conditions of release," Cal. Penal Code § 3453(a). As the California Court of Appeal has explained, PRCS conditions "are imposed without

the need for the defendant's agreement," and "PRCS conditions, like parole conditions, are not a matter of choice, and there is no voluntary consent to the conditions." *People v. Jones*, 231 Cal. App. 4th 1257, 1266, 1267 n.8 (2014). Horwitz-Person herself cites Jones for that proposition, ECF No. 88-1, p. 8, and acknowledges on reply that PRCS conditions are "not a matter of choice," ECF No. 96, pp. 2-3. The TAC alleges that BCPD staff told Doe, "You do not need to agree with the terms, but you do have to sign." ECF No. 83, ¶ 30. That he then signed and initialed the form does not show that he agreed to anything.

Second, even if Doe's signature could be characterized as acceptance of the conditions, it would not establish a waiver of his right to challenge their constitutionality. Courts "indulge every reasonable presumption against waiver of fundamental constitutional rights," and a waiver "must be knowing and voluntary." *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 969 (9th Cir. 2011) (per curiam) (internal quotation marks omitted); *see* Gete v. INS, 121 F.3d 1285, 1293 (9th Cir. 1997). Nothing on the face of the TAC shows such a waiver. And the Ninth Circuit has long held that the government's burden to justify probation conditions that restrict constitutional rights "cannot be avoided by asserting . . . that the probationer has voluntarily waived his rights." *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265 (9th Cir. 1975) (en banc).

Third, Horwitz-Person's reliance on California's equitable maxims and on *People v. Espinoza*, 226 Cal. App. 4th 635 (2014), is misplaced. The availability of defenses to a § 1983 claim is a question of federal law. *See Howlett v. Rose*, 496 U.S. 356, 375-76 (1990). And *Espinoza* addressed a defendant who, having obtained a reduced sentence and release, argued that he should not be subject to PRCS at all. 226 Cal. App. 4th at 638-40. It did not address whether particular conditions imposed by a supervising agency may be challenged as unconstitutional. And its observation that "[h]e who takes the benefit must bear the burden," id. at 640 (quoting Cal. Civ. Code § 3521), has little force where, as alleged here, Doe bargained for nothing and was released because he had completed his sentence. *See* ECF No. 83, ¶ 21.

Finally, even if Doe could be said to have accepted the treatment condition, Plaintiffs' claims against Horwitz-Person do not challenge the condition as written. They challenge her

alleged insistence that Doe admit his guilt, and that his wife affirm it, before she would approve his return home or his wife's role as a "responsible adult." Those requirements appear nowhere in the condition Doe signed. ECF No. 83, ¶¶ 37-38, 52, 56, 153; ECF No. 91, pp. 9-10. The consent argument should be rejected, without prejudice to Horwitz-Person's ability to raise it on a developed record.

**B. State Action**

Horwitz-Person argues that the § 1983 claims against her fail because she is a private therapist who did not act under color of state law. ECF No. 88-1, pp. 10-11; ECF No. 96, pp. 3-4. Private parties generally do not act under color of state law. *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). A private party's conduct may nonetheless be fairly attributable to the State under the public function, joint action, state compulsion, or governmental nexus tests. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012); *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003). The joint action test asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights," which may be shown "by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Tsao*, 698 F.3d at 1140 (internal quotation marks omitted). The inquiry is necessarily fact-bound. A private medical professional may act under color of state law when the State is so deeply involved in the professional's decision-making that the decision may fairly be treated as the State's own. *See Jensen v. Lane County*, 222 F.3d 570, 575-76 (9th Cir. 2000) (private psychiatrist who evaluated persons for involuntary commitment in coordination with county was a state actor); *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747-56 (9th Cir. 2020) (private mental health providers who continued involuntary detention and treatment under state law were state actors); *cf. West v. Atkins*, 487 U.S. 42, 54-56 (1988).

Plaintiffs have plausibly alleged that Horwitz-Person acted under color of state law in the conduct at issue. The TAC alleges that Horwitz-Person "works in cooperation with" BCPD in providing sex offender specific therapy to its supervisees. ECF No. 83, ¶ 8. Lara told Doe that she would need "the specific therapist that she would order" to say it was safe before Doe could live

at home, and that she could not approve Doe's wife as a "responsible adult" without that therapist's approval. *Id.* ¶¶ 31-32. Lara then directed Doe to Horwitz-Person in particular. *Id.* ¶ 33. And Lara and Carr would not approve Doe's return home without Horwitz-Person's approval, which she conditioned on Doe's admission of guilt and his wife's affirmation of it. *Id.* ¶¶ 34, 38, 143. Horwitz-Person describes the allegations the same way. ECF No. 88-1, pp. 6-7. Taken as true, these allegations show more than a referral to a private provider for treatment. The County gave Horwitz-Person a decisive role in deciding whether conditions restricting Doe's liberty would be relaxed, including whether his wife could serve as the "responsible adult" that the County's no-contact condition required, and she exercised that role in concert with the County. That is enough at the pleading stage.

Horwitz-Person responds that she acted "as any private therapist would," that requiring a patient to acknowledge his offense is ordinary therapeutic practice, and that the County alone had authority to enforce the conditions. ECF No. 88-1, pp. 10-11; ECF No. 96, pp. 3-4. Those arguments raise factual disputes about the nature of her role that cannot be resolved on a motion to dismiss. Her reliance on the County's formal authority over the conditions is also beside the point. The question is whether the County and Horwitz-Person jointly exercised that authority, and the TAC plausibly alleges that they did.

**C. Absolute Immunity**

Horwitz-Person argues that, if she acted under color of state law, she is entitled to absolute quasi-judicial immunity, comparing herself to the probation officer in *Demoran v. Witt*, 781 F.2d 155 (9th Cir. 1986). ECF No. 88-1, pp. 11-12; ECF No. 96, pp. 4-5. The official seeking absolute immunity bears the burden of showing that it is justified for the function in question. Antoine v. *Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993). "Absolute immunity is an extreme remedy, and it is justified only where any lesser degree of immunity could impair the judicial process itself." *Garmon v. County of Los Angeles*, 828 F.3d 837, 843 (9th Cir. 2016) (internal quotation marks omitted).

Horwitz-Person has not carried her burden. The probation officer in Demoran was immune for preparing a presentence report for the sentencing court, a function intimately

associated with the judicial process. 781 F.2d at 157-58. Horwitz-Person, by contrast, is not alleged to have been appointed by or to have acted for any court. The sentencing court imposed no treatment condition, ECF No. 83, ¶ 19; no court reviewed her decisions; and the function Plaintiffs challenge (providing treatment and deciding whether to approve Doe's return home) has no judicial analogue. The concern she identifies, protecting treatment providers from harassing litigation, ECF No. 88-1, p. 12, does not by itself justify absolute immunity for a function so far removed from the judicial process. Her request for absolute immunity should be denied.

**D. Coercive Interrogation (Seventh and Eighth Claims)**

In the Seventh Claim, Doe alleges that Horwitz-Person, Lara, and Carr conspired to coerce a confession from him by conditioning his return home, and any contact with his children, on his admitting his offense in therapy and his wife's affirming her belief in his guilt, which he characterizes as "torture" that "shocks the conscience." ECF No. 83, ¶¶ 149-53. Horwitz-Person argues that requiring a sex offender treatment participant to acknowledge his offense neither violates the Fifth Amendment nor shocks the conscience. ECF No. 88-1, pp. 13-14. Plaintiffs respond that conditioning Doe's family life on a confession was psychological coercion amounting to an unconstitutional interrogation. ECF No. 91, pp. 19-21.

Plaintiffs have not plausibly alleged a constitutional violation. The Seventh Claim rests on the Fourteenth Amendment's Due Process Clause. ECF No. 83, ¶ 150. A substantive due process claim based on coercive interrogation requires conduct that "shocks the conscience." *Stoot v. City of Everett*, 582 F.3d 910, 928 (9th Cir. 2009); *see Chavez v. Martinez*, 538 U.S. 760, 774-75 (2003) (plurality opinion). "[O]nly the most egregious official conduct" meets that standard. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). The Ninth Circuit has found the standard met where police deliberately and relentlessly interrogated a suspect while ignoring his requests for counsel. *Cooper v. Dupnik*, 963 F.2d 1220, 1248-50 (9th Cir. 1992) (en banc), overruled on other grounds by Chavez, 538 U.S. at 773. It has also found the standard met where officers isolated two teenage boys and questioned them for hours in a manner the court found could fairly be called "psychological torture." *Crowe v. County of San Diego*, 608 F.3d 406, 431-32 (9th Cir. 2010).

The conduct alleged here is different in kind. Doe was not detained or questioned by police. He was required, as a condition of supervision, to take part in sex offender treatment. He alleges that his therapist would not approve his progress, and the County would not relax the residence and contact restrictions, until he admitted the offense of which he had been convicted. ECF No. 83, ¶¶ 37-38, 140, 143, 153. The Supreme Court has recognized that "[a]n important component of [sex offender] rehabilitation programs requires participants to confront their past and accept responsibility for their misconduct." *McKune v. Lile*, 536 U.S. 24, 33 (2002) (plurality opinion). The undersigned does not minimize the hardship Plaintiffs describe, ECF No. 83, ¶ 152, or suggest that such a requirement is beyond question for a supervisee who maintains his innocence. But conditioning treatment progress, and the relaxing of restrictions tied to it, on acceptance of responsibility is not the kind of egregious abuse of power that shocks the conscience. Plaintiffs allege that the requirement was meant to extract a confession for use at any retrial. *See id.* ¶ 267; ECF No. 91, p. 21. That allegation rests on the treatment condition's confidentiality waiver and the chance of further proceedings; it does not change the nature of the conduct.

Nor does the Fifth Amendment support the claim. The TAC concedes that because Doe "never made an incriminating statement that was used against him in a court of law," his Fifth Amendment right "was not violated in his case." ECF No. 83, ¶ 78; see id. ¶ 150. The concession is correct. A § 1983 claim for violation of the privilege against self-incrimination requires, at a minimum, that a compelled statement have been used against the plaintiff in a criminal case. *See Chavez*, 538 U.S. at 766-67, 769 (plurality opinion); *Stoot*, 582 F.3d at 923-25; *Aguilera v. Baca*, 510 F.3d 1161, 1173 (9th Cir. 2007). *United States v. Antelope*, 395 F.3d 1128 (9th Cir. 2005), on which Plaintiffs rely, ECF No. 91, p. 20, is not to the contrary. It was a direct appeal from the revocation of a defendant's supervised release for invoking the privilege. It addressed the validity of that sanction in the criminal case, not whether damages are available under § 1983. See id. at 1133-39.

Because Plaintiffs have not plausibly alleged a constitutional violation, the Seventh Claim fails. The conspiracy theory does not save it; a conspiracy does not give rise to § 1983 liability

absent an actual deprivation of constitutional rights. *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989). The Eighth Claim rests on the same theory under the due process clause of the California Constitution, ECF No. 83, ¶¶ 155-57, and Plaintiffs identify no basis for concluding that the state provision affords broader protection against the conduct alleged. It fails for the same reasons. *See* Cal. Civ. Code § 52.1(b)-(c). Because the undersigned recommends dismissal on this ground, it does not reach Horwitz-Person's qualified immunity argument as to these claims. Because this is the first ruling on the sufficiency of Plaintiffs' pleadings, the dismissal should be with leave to amend.

**E. Familial Association (Fifth and Sixth Claims)**

1. <u>The Underlying Right</u>

Parents and children have a liberty interest in each other's companionship and society, protected by the Fourteenth Amendment against unwarranted state interference. *Crowe*, 608 F.3d at 441 & n.23; *Lee v. City of Los Angeles*, 250 F.3d 668, 685-86 (9th Cir. 2001); *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987), overruled on other grounds by *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc). That interest is not absolute, and the State's interest in protecting children is compelling. *See* ECF No. 88-1, p. 13. But a person under supervision keeps the interest. The Ninth Circuit has held that a supervised-release condition restricting a sex offender's contact with his own children implicates a "fundamental" liberty interest. *United States v. Wolf Child*, 699 F.3d 1082, 1090-93 (9th Cir. 2012). Under the federal supervised-release statute, such a condition requires an individualized review, supported by record evidence, showing that it involves no greater deprivation of liberty than is reasonably necessary. *Id.*

Plaintiffs allege that Doe's offense involved no contact with any child. They allege that a child-protection investigation and a court-ordered psychological examination raised no concern that he posed a risk to his own children, and that the sentencing court did not restrict his contact with them. ECF No. 83, ¶¶ 14-15, 19. Yet Doe was barred from living with his children for roughly a year, and from any contact with them, including telephone calls and visits supervised by his wife, for nearly nine months. No Defendant ever assessed the children's relationship with

Doe or his wife's ability to protect them. And Doe's return home, and any contact with the children, were made to depend on his admitting guilt and his wife's affirming it. *Id.* ¶¶ 31-32, 38, 127, 129-34, 142-43, 153, 182, 256. Defendants respond that the restrictions were designed to protect the children and that Doe could have obtained approval to return home. ECF No. 87-1, p. 15; ECF No. 88-1, pp. 12-13. Those responses raise factual disputes. Taken as true, Plaintiffs' allegations plausibly state a claim of unwarranted interference with familial association.

2. The Alleged Conspiracy

Horwitz-Person argues that Plaintiffs have not alleged an agreement between her and the County Defendants, and that the TAC shows only that Doe was required to attend therapy and that she treated him as any therapist would. ECF No. 88-1, pp. 14-15; ECF No. 96, p. 5. A § 1983 conspiracy requires "an agreement or meeting of the minds to violate constitutional rights," *Crowe*, 608 F.3d at 440 (internal quotation marks omitted), but the agreement "need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants," id. (citing *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999)). Each participant "must at least share the common objective of the conspiracy." Id. (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc)). "A private individual may be liable under § 1983 if she conspired or entered joint action with a state actor." *Crowe*, 608 F.3d at 440.

The TAC alleges more than parallel conduct. Horwitz-Person works in cooperation with BCPD in treating its supervisees. Lara told Doe that she would need the therapist she assigned him to approve his return home and his wife's role as a "responsible adult," and then steered him to Horwitz-Person. In their first conversation, Horwitz-Person told Doe that her approval would not come for at least six months; at intake, she told him that it would also require him to admit his offense and his wife to affirm it. Lara then declined every alternative Plaintiffs proposed, telling Doe that she needed Horwitz-Person's approval, and Lara and Carr would not approve Doe's return home without it. ECF No. 83, ¶¶ 8, 31-34, 37-38, 130-34, 140, 143. Viewed together and taken as true, these allegations plausibly suggest that Horwitz-Person and the County Defendants shared a common objective of keeping Doe from his home and his children until he admitted

guilt. Cf. Crowe, 608 F.3d at 440-41 (holding that a factfinder could infer an agreement between police and a private consultant from their coordinated conduct). Whether the evidence will support that inference is a question for a later stage. The TAC's more conclusory allegation that the defendants "entered into an agreement," ECF No. 83, ¶ 138, is not entitled to weight on its own, *see Iqbal*, 556 U.S. at 678-79, but the factual allegations just described suffice.

3. Qualified Immunity

Horwitz-Person argues that she is entitled to qualified immunity because Doe's right to familial association is not absolute in light of his conviction and because a reasonable therapist would not have understood her conduct to be unlawful. ECF No. 88-1, pp. 12-13; ECF No. 96, pp. 4-5.

Government officials are entitled to qualified immunity from damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The inquiry asks (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) whether the right was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). A right is clearly established only if "existing precedent [has] placed the statutory or constitutional question beyond debate," and courts may not "define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741-42 (2011). Deciding qualified immunity at the motion-to-dismiss stage "raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). If the complaint "contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right," the plaintiff may proceed. *Id.* at 1235 (internal quotation marks omitted).

Whether the conduct alleged here violated clearly established law depends on facts not yet before the Court: the basis for the restrictions as applied to these children, what Defendants knew about any risk Doe posed to them, and the criteria that actually governed the approval decisions. By the time of the events at issue, the Ninth Circuit had held that a supervision condition barring a sex offender from contact with his own children implicates a fundamental liberty interest and

requires an individualized assessment. *Wolf Child*, 699 F.3d at 1090-93 (defendant convicted of attempted sexual abuse of a minor). The California Supreme Court had likewise held that every parolee "retains basic constitutional protection against arbitrary and oppressive official action," and that residency restrictions on registered sex offenders must be "based on, and supported by, the particularized circumstances of each individual parolee." *In re Taylor*, 60 Cal. 4th 1019, 1038, 1042 (2015). Whether those authorities placed the unlawfulness of the conduct alleged here beyond debate cannot be decided without a factual record of what Horwitz-Person actually did and why.

Horwitz-Person's argument rests largely on her characterization of her conduct as ordinary therapeutic practice, ECF No. 88-1, p. 13; ECF No. 96, p. 5, which the Court cannot accept on a motion to dismiss. Qualified immunity should be denied as to the Fifth Claim, without prejudice to renewal on a developed record. *See Keates*, 883 F.3d at 1235.

4. <u>The Sixth Claim</u>

Horwitz-Person argues that the Sixth Claim, which asserts interference with familial association in violation of the Bane Act, fails for the same reasons as the § 1983 claims, because the therapy Doe agreed to attend cannot amount to intimidation or coercion, and because she did not act with the specific intent the Bane Act requires. ECF No. 88-1, p. 15; ECF No. 96, pp. 5-6. The Bane Act provides a cause of action against a person, "whether or not acting under color of law," who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment" of rights secured by federal or state law. Cal. Civ. Code § 52.1(b)-(c). The Sixth Claim rests on rights secured by article I, sections 1 and 2 of the California Constitution. ECF No. 83, ¶ 146. Horwitz-Person does not argue that those rights cannot be infringed by a private party, and in any event Plaintiffs have plausibly alleged that she acted jointly with the County Defendants.

The TAC also alleges coercion: that Horwitz-Person used her approval, on which Doe's return home and any contact with his children depended, to pressure Doe to confess and his wife to affirm his guilt. ECF No. 83, ¶¶ 143, 148, 153. And the Bane Act's specific-intent requirement may be satisfied by reckless disregard of a right that is "clearly delineated and plainly applicable

under the circumstances of the case." *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 801-03 (2017) (internal quotation marks omitted); *see Reese v. County of Sacramento*, 888 F.3d 1030, 1043-45 (9th Cir. 2018) (adopting Cornell's specific-intent standard). Intent may be alleged generally. Fed. R. Civ. P. 9(b). Plaintiffs allege that Horwitz-Person demanded an admission each week, never asked Doe to take a polygraph or otherwise assessed his risk, never contacted his wife or children, and conditioned his wife's approval on her affirming his guilt, while Doe had no contact with his children for nearly nine months. ECF No. 83, ¶¶ 37-38, 127, 140, 142-43, 148. Those allegations suffice at this stage. Whether the right was clearly delineated and plainly applicable overlaps with the qualified immunity question and, for the same reasons, cannot be resolved on the pleadings. Horwitz-Person's motion should be denied as to the Sixth Claim.

**F. Leave to Amend**

Courts should freely give leave to amend when justice so requires. Fed. R. Civ. P. 15(a)(2). In deciding whether to grant leave, courts consider undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). Although the operative pleading is Plaintiffs' third amended complaint, no court has yet ruled on the sufficiency of any of Plaintiffs' pleadings, *see* ECF Nos. 71, 78, 82, so there has been no repeated failure to cure identified deficiencies.

Leave to amend should therefore be granted as to the Seventh and Eighth Claims. Any amended complaint must be complete in itself without reference to any prior pleading. *See* E.D. Cal. L.R. 220.

**IV. RECOMMENDATIONS**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Horwitz-Person's motion to dismiss, ECF No. 88, be GRANTED with leave to amend as to the Seventh and Eighth Claims and DENIED as to the Fifth and Sixth Claims.

2. Plaintiffs be granted leave to file a fourth amended complaint consistent with these findings and recommendations and those issued concurrently on the County Defendants' motion to dismiss, ECF No. 87, within 30 days of the District Judge's order resolving them, and Defendant Horwitz-Person be directed to respond within 21 days after service of any amended complaint or, if no amended complaint is filed, within 21 days after the deadline to file one.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **14 days** after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within **14 days** after service of objections. Failure to file objections within the specified time may waive the right to appeal. *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 23, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE